TARGET CORPORATION, APPELLEE, *v*. GREENE COUNTY BOARD

OF REVISION ET AL., APPELLANTS.

[Cite as *Target Corp. v. Greene Cty. Bd. of Revision,*

122 Ohio St.3d 142, 2009-Ohio-2492.]

*Real property taxation — Appraisal — Large, owner-occupied retail store — Economic obsolescence — Evidence lacking for valuation as special-purpose property.*

(No. 2008-1231 — Submitted April 21, 2009 — Decided June 3, 2009.)

APPEAL from the Board of Tax Appeals, No. 2006-V-751.

_____

**Per Curiam.**

{¶ 1} Appellants, the Greene County Auditor and the Greene County Board of Revision (collectively, "the county"), appeal from a decision of the Board of Tax Appeals ("BTA") that adopted a reduced valuation of the property owned by the appellee, Target Corporation. The BTA based its determination of value on an appraisal report and testimony that Target presented to the board of revision ("BOR").

{¶ 2} The tax year at issue is 2005, and the property at issue consists of an 11.82-acre parcel improved in 1998 with a Target discount store that encompasses 122,522 square feet. The auditor valued the property at $8,188,290. The appraisal report that Target presented to the BOR relied principally on a sales-comparison approach that used "big box" stores originally built to suit the needs of Kmart and Ames but later sold in the context of the bankruptcy of those retailers. The report concluded the value of the property to be $4,500,000 for 2005, and the BTA adopted that figure as the value of the property.

**{¶ 3}** The county advances two propositions of law, both of which fault the appraisal that the BTA relied upon for using sales of other properties that were, in the county's view, not comparable to the property at issue. Because we find that the BTA's decision is supported by reliable and probative evidence and is, given the evidence before it, both reasonable and lawful, we affirm.

**Facts**

**{¶ 4}** On March 24, 2006, Target Corporation (formerly known as Dayton Hudson Corporation) initiated this case by filing a complaint that challenged the auditor's valuation. The auditor had determined a land value of $2,599,860 plus a $5,588,430 building value for a total value of $8,188,290. The complaint requested a reduction in value to $5,000,000. At the hearing before the BOR on May 15, 2006, Target presented an appraisal report authored by Robin Lorms and Curtis Hannah, along with Hannah's testimony. The appraisal determined that the highest and best use of the property as if vacant was retail use. As improved, the highest and best use was "continued discount storeroom" — but the appraisers qualified that finding by observing that the "improvements have significant obsolescence that is typical of most big box developments," a feature that "results in a market value which is significantly less than replacement cost less physical depreciation."

**{¶ 5}** Indeed, the topic of economic obsolescence dominates the appraisal report. Although big-box "retailers thrive on efficiency, knowing that their stores are of identical dimensions for purposes of store design, product and display placement and restocking," from the standpoint of their marketability such big-box structures suffer "functional and external obsolescence" because "few retailers are capable of occupying a space of this size" and accordingly "tenants pay rents which are much lower than rents which would make new construction financially feasible." Moreover, the "[c]osts to retrofit existing big boxes to accommodate the needs of 'first generation' retailers are too high for financial

feasibility." After a lengthy discussion of big-box marketability, the appraisal states that "the fee simple market value of these properties is substantially lower than replacement costs, not only due to physical depreciation but also obsolescence. This obsolescence occurs the day they are completed[;] thus even brand new big box stores are worth less than their cost to rebuild."

{¶ 6} These considerations guided the appraisers when they performed the sales-comparison and income-capitalization approaches to valuing the property. Namely, the appraisers selected both as sale and as rent comparables properties that had been either sold to second-generation users or leased to second-generation tenants. In particular, four stores – two abandoned Ames stores and two abandoned Kmarts – constituted the basis for the sales-comparison approach; that approach yielded a value of $4,500,000. As for rent comparables, the appraisers specifically rejected the use of new discount stores because they were either owner-occupied or leased on a build-to-suit basis. The income approach yielded a valuation of $3,800,000.

{¶ 7} After performing an appraisal on the cost approach but rejecting it because of the external obsolescence, the appraisal report relied principally on the sales-comparison approach and viewed the income-capitalization approach as supporting the lower value for the property. As noted, the appraisal determined the value of the property to be $4,500,000.

{¶ 8} In its decision, the BOR retained the land value at $2,599,860 and reduced the building value to $5,059,520. This adjustment resulted in a total value of $7,659,380. Target appealed to the BTA, where the parties waived hearing.

{¶ 9} The BTA reviewed the record and found no "evidence or rationale which supports the BOR's decision to value the subject at $7,659,380." *Target Corp. v. Greene Cty. Bd. of Revision* (May 27, 2008), BTA No. 2006-V-751, at 8. In its review of the appraisal, the BTA essentially agreed with the appraisers'

emphasis on the sales-comparison approach. Id. at 11. The BTA specifically observed that the county "elected not to provide us with any competing market information that could allow us to come to a different conclusion concerning the subject's value." Id. at 12. Additionally, the board rejected the county's suggestion that the appraisal should have relied on first-generation leasing terms, in particular build-to-suit lease terms, based upon the absence of any evidence to support that theory. Id. The BTA found that Target's appraisal sustained its burden to show a value different from the one adopted by the BOR. Noting that the county had presented no evidence in rebuttal, the BTA adopted $4,500,000 as the value of the property.

**Analysis**

{¶ 10} Under our cases, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. On the other hand, " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support' " for the BTA's decision, we will affirm. Id., quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. Moreover, we " 'will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15, quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240.

{¶ 11} In this case, the county advances two grounds for reversing the BTA's decision. Both amount to objections to the manner in which the BTA evaluated the evidence before it, and therefore both must be reviewed with deference to the BTA's fact-finding. Because the BTA's decision is supported by

reliable and probative evidence, and because the county presented no controverting evidence, we must affirm.

{¶ 12} First, the county asserts that the BTA should have used data from the first-generation sale prices and rentals rather than second-generation examples. But as the BTA observed, the appraisers' research "did not uncover any sales between first generation users," and the county "offered no evidence of any sale or lease between first generation users." *Target Corp. v. Greene Cty. Bd. of Revision* (May 27, 2008), BTA No. 2006-V-751, at 10. This left the record in a state that supported the BTA's conclusion that "second generation users are the most viable potential buyers/renters of big-box space." Id.

{¶ 13} In particular, the county argues that the appraisal's reference to "six first generation lease rates for Wal-Mart stores in Ohio" and "four build-to-suit Kohl's leases" presented the proper avenue for analyzing the value of the property at issue. The county cites the court's latest cases in which a recent, arm's-length sale price was deemed to constitute the value of the property and asserts that these cases support its position.[1] We reject this contention for two reasons. First, the appraisal states specific reasons for not using the first-generation rents as comparable. Second, the case law the county focuses on involves properties encumbered with above-market leases. The present property is not so encumbered, and under these circumstances, comparability cannot be established without more evidence.

{¶ 14} The county's second main argument relies on *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 661 N.E.2d 1056. In

---

1. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782 (encumbrance of property with below-market lease did not prevent sale price from constituting the value of the property); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 118 Ohio St.3d 263, 2008-Ohio-2450, 888 N.E.2d 411 (sale price of Wal-Mart subject to above-market build-to-suit lease constituted value of the property); *Rhodes v. Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236;

*Meijer*, we affirmed a BTA decision that specifically rejected the type of functional obsolescence that Target's appraisers found to be present in this case. In the context of resolving a battle of appraisals, the BTA in *Meijer* declined to adopt the larger amount of obsolescence found by the owner's appraiser. The BTA found "nothing about the present property which is obsolete or useless to the owner due to changing business conditions." *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (Feb. 8, 1995), BTA Nos. 1993-M-731, 1993-M-732, and 1993-M-733, at 28. Indeed, "[t]he owner, by purchasing the land and constructing the building, evidences a market need for such a property. Therefore the costs of purchase and construction evidence that a prospective purchaser was willing to pay at least the costs of the property as newly constructed." Id. at 32.

{¶ 15} Although the owner argued that this reasoning constituted valuation in use prohibited by the Ohio Constitution, the BTA disagreed, citing our decision in *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 12 OBR 347, 466 N.E.2d 909. We affirmed the BTA. *Meijer*, 75 Ohio St.3d 181, 661 N.E.2d 1056.

{¶ 16} In essence, the county's reliance on *Meijer* implicates the special-purpose-property doctrine that we articulated in *Dinner Bell Meats*. In that case, two competing appraisals employed differing cost approaches based on their respective findings that the property was "special purpose" in nature. Id. at 271, 12 OBR 347, 466 N.E.2d 909. We concluded that "in utilizing the 'cost approach' for a 'special purpose' building," the appraiser "simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility." Id. at 272. In so holding, we acknowledged the general principle that " 'the special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique purpose for which it

---

*Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 262, 2008-Ohio-2449, 888 N.E.2d 410.

was built,' " a doctrine necessary to prevent "the owner of a distinctive, but yet highly useful, building" from "escap[ing] full property tax liability." Id., quoting *Fed. Res. Bank of Minneapolis v. State* (Minn.1981), 313 N.W.2d 619, 623.

{¶ 17} While one may speculate on whether, for purposes of tax valuation, the Target store at issue might validly be considered as special-purpose property, we have never in the past disturbed a determination of value by the BTA based on such speculation. To the contrary, each of the decisions in which we have alluded to the special-purpose doctrine involves an appraisal offered in support of the value that was ultimately determined and our affirmance of the BTA's reliance on that evidence. *Meijer*, 75 Ohio St.3d 181, 661 N.E.2d 1056; *Dinner Bell Meats*, 12 Ohio St.3d 270, 12 OBR 347, 466 N.E.2d 909; *Oakwood Club v. Cuyahoga Cty. Bd. of Revision* (1994), 70 Ohio St.3d 241, 638 N.E.2d 547. Far from furnishing precedent for second-guessing the BTA, to date, our case law concerning special-purpose property has shown deference to the fact-finding expertise of that tribunal. In the present case, as already discussed, the county presented no evidence in support of its theory that the Target store might qualify as special-purpose property.

### Conclusion

{¶ 18} For all the foregoing reasons, the BTA reasonably and lawfully adopted the conclusion of value propounded by Target's appraiser. We therefore affirm.

Decision affirmed.

MOYER, C.J., and O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 19}** In *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 272, 12 OBR 347, 466 N.E.2d 909, we held that "in utilizing the 'cost approach' for a 'special purpose' building," the appraiser "simply considered the utility of the properties in conjunction with the highest and best use" of its current owner. We reasoned that " 'the special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique purpose for which it was built,' " a doctrine necessary to prevent "the owner of a distinctive, but yet highly useful, building" from "escap[ing] full property tax liability." Id., quoting *Fed. Res. Bank of Minneapolis v. State* (Minn.1981), 313 N.W.2d 619, 623.

**{¶ 20}** Later, the BTA applied *Dinner Bell Meats* in *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (Feb. 8, 1995), BTA Nos. 1993-M-731, 1993-M-732, and 1993-M-733. The BTA found "nothing about the present property which is obsolete or useless to the owner," id. at 28, and held that "the costs of purchase and construction evidence that a prospective purchaser was willing to pay at least the costs of the property as newly constructed." Id. at 32. We affirmed the BTA. *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 661 N.E.2d 1056.

**{¶ 21}** Like the meatpacking plant in *Dinner Bell Meats* and the big-box retail store in *Meijer*, the Target store in this case has been designed and constructed to suit its owner's particular business needs. Unlike the owners of the Kmart and Ames stores that Target's appraiser used as comparable properties, Target is a viable, going concern operating at many locations throughout the state. I believe the BTA erred by not viewing the evidence in light of the case law just cited.

**{¶ 22}** The majority opinion acknowledges the principles that we articulated in *Dinner Bell Meats* and *Meijer* but declines to apply them on the grounds that the county presented no evidence. I disagree because I think that

auditors, boards, and courts should use common sense, and common sense dictates that Kmart and Ames stores sold out of bankruptcy are not similar to Meijer and Target stores that are still being operated by the successful retailers that built them. In light of that real-world distinction, I would hold that Target failed to discharge its burden to show that its store, constructed in 1998, had become obsolete by 2005. See *Rollman & Sons Co. v. Hamilton Cty. Bd. of Revision* (1955), 163 Ohio St. 363, 56 O.O. 337, 127 N.E.2d 1, paragraph one of the syllabus ("Where a taxpayer asserts that functional depreciation should be considered in valuing his property for the purpose of taxation, the burden is upon the taxpayer to prove such depreciation"). I also believe that the BTA erred by not giving sufficient weight to the cost approach in light of the case law. Accordingly, I would vacate the decision below and remand for consideration in light of *Dinner Bell Meats* and *Meijer*. I therefore respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Siegel, Siegel, Johnson & Jennings Co., L.P.A., and Nicholas M.J. Ray, for appellee.

James R. Gorry, for appellants.

_____