[Cite as *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision,* 122 Ohio St.3d 447, 2009-Ohio-3479.]

MEIJER STORES LIMITED PARTNERSHIP, APPELLANT AND CROSS-APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES AND CROSS-APPELLEES; LICKING HEIGHTS LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE AND CROSS-APPELLANT.

[Cite as *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision,* 122 Ohio St.3d 447, 2009-Ohio-3479.]

*Real property taxation — Value of newly constructed, owner-occupied big-box store — Conflicting appraisal evidence — Decision of Board of Tax Appeals affirmed.*

(No. 2008-1248 — Submitted May 19, 2009 — Decided July 22, 2009.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals,

Nos. 2005-T-441 and 2005-T-443.

_____

O'CONNOR, J.

{¶ 1} Meijer Stores Limited Partnership ("Meijer") seeks to reverse a decision of the Board of Tax Appeals ("BTA") that determined the value of a newly constructed Meijer store for the 2003 tax year. The BTA rejected the appraisal Meijer offered and adopted an appraisal presented on behalf of the Licking Heights Local School District Board of Education ("school board"). For purposes of this appeal, the most important difference between the two appraisals rests in the selection of comparable-sale properties and comparable-rent properties: the school board's appraiser utilized a range of properties that included "build-to-suit" properties that, unlike the property at issue, were not owned by the business that operated on the premises.

{¶ 2} The school board contends that we should defer to the factual findings of the BTA. (The school board has also filed a cross-appeal, but has not

set forth any propositions of law in support of that appeal. As a result, we regard the assignments of error in the cross-appeal as abandoned. See *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3.) For its part, Meijer asserts that the BTA violated prior holdings by this court and committed legal error in its evaluation of the evidence. We agree with the school board, and we therefore affirm the decision of the BTA.

## I. Facts

### A. Background

{¶ 3} On March 25, 2004, Meijer filed a complaint against valuation with the Franklin County Board of Revision ("BOR") for the 2003 tax year. The property comprised 32.508 acres, consisting of a main parcel of 24.03 acres on which the Meijer store is situated and four adjacent outparcels: one 2.483-acre parcel sold to Max & Erma's in late January 2003 as a site for a future restaurant; one parcel at the corner of East Broad Street and Waggoner Road, on which a Meijer service station and convenience store had been constructed; and two other parcels, one fronting Broad Street and the other Waggoner Road.

{¶ 4} The most significant point of contention between the litigants lies in valuing the big-box Meijer store on the main parcel, a building that encompasses approximately 193,000 square feet and that Meijer built to its specifications. Construction occurred during 2001 and was completed in August 2002. For the tax year 2003, the auditor valued the property at $13,290,000 based on reconciling a cost and an income approach. Meijer's complaint asked for a reduction to $9,500,000.

{¶ 5} Meijer presented the appraisal report and testimony of Robin Lorms to both the BOR and the BTA. The BOR declined to reduce the value of the property on two grounds. First, the BOR found that Meijer had declined to submit actual-cost information. Second, the BOR found Lorms's analysis to be unpersuasive.

**{¶ 6}** When Meijer appealed to the BTA, the school board presented the testimony and appraisal of Samuel Koon in opposition to Meijer's claim for reduction. Both Lorms and Koon used cost, income-capitalization, and sales-comparison approaches in their appraisal reports. Both relied most heavily on the values obtained from the income-capitalization and sales-comparison approaches.

*B. The conflicting appraisal evidence*

**{¶ 7}** The testimony of the appraisers, the expository passages of their appraisal reports, and the values they determined for the property reflect a fundamental dispute. Lorms looked at the big-box store as adding only modest market value because the structure would not be easily adaptable to the needs of a potential buyer, a factor that he opined would impair the property's marketability. According to Lorms, most potential buyers would be hard-pressed to utilize such a large space for their own business and would probably have to significantly renovate or even tear down the existing structure in order to use the property. Lorms called this limitation on the property's marketability "external obsolescence" and looked at second-generation purchasers and tenants to determine value by the sales-comparison and income-capitalization approaches.

**{¶ 8}** By contrast, Koon looked at Meijer's own use as the touchstone for determining market rent and comparable sales. When asked, in the context of his income approach, who would lease the space, Koon answered: "Meijer." Accordingly, "market rent" for Koon consisted in part as what rent Meijer itself would be willing to pay to an owner other than itself. Comparable sales in Koon's view included sales by developers who built big-box retail facilities on a build-to-suit basis and then sold them to third parties.[1]

---

1. As for the cost approach, both appraisers minimized its importance, but for very different reasons. Lorms, who set the value at $10,200,000 under his cost approach, stated that functional and external obsolescence led him to attach little weight to that approach. Koon, who set the value at $16,000,000 under his cost approach, stated that he would need actual-cost figures "as a check

**{¶ 9}** The selection of other properties as comparables by the two appraisers bears out this general point of contrast. For his sales-comparison approach, Lorms used eight properties that included four Kmarts that had been abandoned by that entity during its bankruptcy, two Ames stores that had also been abandoned during bankruptcy, a WalMart abandoned by the retailer when it moved into a new supercenter, and a Sam's Club that "went dark" in 1995 and took five years to sell. On the other hand, Koon's comparable properties included seven properties, four of which were purchased subject to long-term leases. Koon opined that the value of the Meijer store is "at a point which lies somewhere between selling prices of properties which are leased to first generation users * * * and prices of properties which are vacant and available for occupancy."

**{¶ 10}** Similar differences pervade the rent comparables used by the two appraisers. Lorms used a "market rent" approach that deliberately excluded data derived from build-to-suit leases and newly developed discount stores because under Lorms's theory, the rent in such cases reflected values other than market rent that pertained to the fee-simple estate. Koon took the contrary approach: by viewing Meijer itself as the potential lessee of the property, Koon justified using seven first-generation properties and five second-generation properties as rent comparables. The first-generation comparables were all build-to-suit properties. In those arrangements, an independent developer constructed the store to the retailer's specifications with a lease in place that provided recovery of costs and a profit. The developer was then the owner of the property and could continue to collect rent or resell the property with the lease in place to a new owner.

**{¶ 11}** In his report, Koon opined that "second-generation rents will never adequately reflect market rent" for property such as that at issue. Koon emphasized the newness of the construction and stated that "the fact that the

---

against the estimated construction costs," but that absent such figures, he could give only "marginal consideration" to that approach.

subject facility continues to operate under the auspice of its first generation user indicates that it possesses certain attributes which make it inherently more desirable than second-generation space." Accordingly, Koon opined that the market rent applicable to the property at issue "is considered to lie somewhere between the ranges indicated by the first and second generation comparables, with a strong bias towards those rents indicated by the first generation lease comparables."

{¶ 12} The appraisers' conflicting methodologies yielded significantly different valuations. Lorms's sales-comparison approach determined the value of all the parcels at issue (including the main parcel on which the Meijer store had been constructed) to be $8,800,000. Koon concluded that the value of the main parcel was $12,100,000, and by adding that figure to the value he derived for the adjacent service station and convenience store and other land, Koon arrived at a total value of $15,100,000 under the sales-comparison method.

{¶ 13} With regard to the income-capitalization approach, Lorms arrived at a value of $7,800,000 for all the parcels. Under this approach, Koon determined the value of the main parcel to be $11,600,000, and when added to the value of the other parcels, the value totaled $14,600,000. After reconciling the different approaches, Lorms certified a total value of $8,800,000, and Koon certified a total value of $14,850,000.

### C. The BTA's decision

{¶ 14} While acknowledging that it had considered Lorms's theory of obsolescence as probative in other cases, the BTA stated that "this theory has not always been accepted by the board where it has been shown that the obsolescence factors advanced by the appraiser do not exist in a particular market." *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision* (May 27, 2008), BTA Nos. 2005-T-441 and 2005-T-443, at 17. The BTA also cited *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 661 N.E.2d 1056, as

supporting the proposition that the proponent of functional and external obsolescence must shoulder the burden of establishing the obsolescence.

{¶ 15} After reviewing the competing appraisals, the BTA found itself "unable to conclude * * * that Meijer has met this burden," inasmuch as "Mr. Lorms' facts and figures have been successfully refuted by the facts and figures presented by the [school board]." *Meijer Stores Ltd.*, BTA Nos. 2005-T-441 and 2005-T-443, at 18. In particular, the BTA quoted Koon's statements – quoted in part above – relating to why he emphasized first-generation rent as opposed to second-generation rent. Id. at 19. The BTA distinguished the present case from those cases in which obsolescence was considered an important factor in determining value. Namely, the present case involved "nearly new improvements," and the property "is located in a retail corridor that is both flourishing and growing." Id. Also significant was the superior quality of evidence in this case that supported a higher value of the property.

{¶ 16} Finally, the BTA considered and rejected the school board's contention that the cost approach should be regarded as probative. It instead adopted Koon's valuation of $14,850,000 for tax year 2003 ($14,075,000[2] for 2004).

## II. Analysis

*A. Meijer has not met its burden to show an abuse of discretion by the BTA*

{¶ 17} We will " 'reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support' " for the BTA's decision, this court will affirm. Id., quoting

---

2. In January 2003, one of the outparcels was sold.

*Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. More specifically, we " 'will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15, quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240.

{¶ 18} In the present case, the BTA weighed the probative value of two appraisals and found one to be more probative than the other. This decision rests within the core of the BTA's competence as fact-finder and deserves the highest degree of deference from this court.

{¶ 19} Against this general principle of deference, Meijer criticizes the BTA's decision as being inconsistent with other BTA decisions wherein the BTA had accepted Lorms's appraisals of big-box properties and specifically found his analysis probative. However, as the BTA explained, some of the cases cited by Meijer were factually distinguishable from this case, and in the other cases, insufficient evidence had been presented to rebut Lorms's theory of obsolescence. *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision* (May 27, 2008), BTA Nos. 2005-T-441 and 443, at 21-22. For example, in a case the BTA decided the same day it decided the present case, *Target Corp. v. Greene Cty. Bd. of Revision* (May 27, 2008), BTA No. 2006-V-751, affirmed, 122 Ohio St.3d 142, 2009-Ohio-2492, 909 N.E.2d 605, the school board did not appear, and the county presented no evidence to counter the appraisal and testimony of Lorms. In the absence of contrary evidence, the BTA adopted the value as determined by Lorms, and we affirmed that decision. By contrast, in this case, the BTA found that the appraisal and testimony of Koon rebutted Lorms's appraisal.

{¶ 20} Meijer also specifies a number of alleged deficiencies in Koon's appraisal and testimony. But determining the probative value of an appraiser's

testimony lies within the competence of the BTA, and we will defer to the BTA's rejection of Meijer's contention in this regard.

    *B.  Meijer's specific legal objections to the BTA's decision have no merit*

**{¶ 21}** Meijer argues that the value of its property should not be determined by comparing it to properties that are subject to long-term leases that are favorable to the owner. According to Meijer, such a comparison involves a valuation of a speculative "leased fee" interest rather than of the fee simple.[3]

**{¶ 22}** To be sure, the present case does not involve a build-to-suit situation. Meijer both owns and uses its property; it acquired the land and then constructed a store on it. By contrast, in the build-to-suit situation, the owner builds a structure to the tenant's specifications and then enjoys the benefit of rent under a long-term lease that provides the owner with recovery of the costs of construction and a profit. Alternatively, the owner can turn around and sell the property, and the price the property commands will be enhanced by the anticipated revenue stream from the lease. *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 13, citing *Rhodes v. Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236.

**{¶ 23}** Although Meijer's property is currently not encumbered with a lease, Meijer's contention that its property cannot be compared to build-to-suit properties is mistaken. As recent cases have demonstrated, the possibility of encumbering a property like the one at issue here constitutes – as a purely factual matter – one method of realizing the value of legal ownership of the property.

---

3. The first syllabus paragraph in *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, militates in favor of Meijer's position: the "fee simple estate is to be valued as if it were unencumbered." We have recently observed that our later case law raises a "serious question" whether the *Alliance Towers* pronouncement may still be applied. *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 22. But we decline to address the continued vitality of the *Alliance Towers* syllabus because the present case does not involve the effect on value of actual "encumbrances."

See *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 27 ("encumbering property typically represents an owner's attempt to realize the full value of the property"); *AEI Net Lease Income & Growth Fund*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 21 (sale-leaseback, in its totality, constituted an arm's-length transaction in which seller/lessee and buyer/lessor each pursued the objective to realize value of the realty). Moreover, by drawing the distinction between "fee simple" and "leased fee," Meijer predicates its argument on a legal premise that our cases have rejected.[4] We have held that a recent arm's-length sale price should not be adjusted to remove the economic effect of such encumbrances when they exist. *Cummins*, ¶ 24. And we have also determined that a sale price does not have to be adjusted to remove the effect of above-market rent paid by a creditworthy tenant. *AEI*, ¶ 12, 26, 30. It follows that an appraiser, when determining the value of Meijer's store, may take into account the possibility that at some point, the store could be held as a rental property subject to an above-market lease that would enhance its value.

{¶ 24} Meijer is also mistaken in arguing that the school board's appraisal essentially amounts to a constitutionally prohibited value-in-use appraisal. This court deemed unconstitutional a legislative act that required consideration of "current use" to the exclusion of market value in the valuation of property. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1972), 32 Ohio St.2d 28, 30, 32, 61 O.O.2d 238, 289 N.E.2d 579. However, we have also held that the constitutional prohibition does not bar consideration of current-use value in the context of the

---

4. The distinction between "fee simple" and "leased fee" is one drawn in the context of appraisal practice. See Appraisal Institute, The Appraisal of Real Estate (13th Ed.2008) 114. The appraisal industry uses the term "fee simple" to refer to unencumbered property – or to property appraised as if it were unencumbered. Id. This distinction is not one recognized by the law, however. A "fee simple" may be absolute, conditional, or subject to defeasance, but the mere existence of encumbrances does not affect its status as fee simple. Black's Law Dictionary (8th Ed.2004) 648-649.

"special-purpose property" doctrine. *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 271, 12 OBR 347, 466 N.E.2d 909.

{¶ 25} In *Dinner Bell Meats*, the appraisal adopted by the BTA employed a cost approach based on the appraiser's finding that the property was developed for a "special purpose." Id. at 271, 12 OBR 347, 466 N.E.2d 909. In upholding the BTA's decision, we concluded that "in utilizing the 'cost approach' for a 'special purpose' building, [the appraiser] simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility." Id. at 272, 12 OBR 347, 466 N.E.2d 909. In so holding, we acknowledged that the present use of a property may be considered when " 'a building in good condition [is] being used currently and for the foreseeable future for the unique purpose for which it was built' "; otherwise, "the owner of a distinctive, but yet highly useful, building [would be able] to escape full property tax liability." Id., quoting *Fed. Res. Bank of Minneapolis v. State* (Minn.1981), 313 N.W.2d 619, 623. We have followed the doctrine of *Dinner Bell Meats* in later cases, including a case involving the valuation of a Meijer store. See *Oakwood Club v. Cuyahoga Cty. Bd. of Revision* (1994), 70 Ohio St.3d 241, 243-244, 638 N.E.2d 547; *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 661 N.E.2d 1056.

{¶ 26} Of particular importance here is the 1996 *Meijer* case, in which we affirmed a BTA decision against which were raised arguments similar to those advanced in this case. In the context of resolving a battle of appraisals, the BTA had in *Meijer* declined to adopt the larger amount of obsolescence found by the owner's appraiser. The BTA had found "nothing about the present property which is obsolete or useless to the owner due to changing business conditions." *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (Feb. 8, 1995), BTA Nos. 93-M-731, 93-M-732, and 93-M-733. Indeed, "[t]he owner, by purchasing the land and constructing the building, evidences a market need for such a property.

Therefore, the costs of purchase and construction evidence that a prospective purchaser was willing to pay at least the costs of the property as newly constructed." Id. Although the owner had argued that such reasoning constituted value-in-use appraisal prohibited by the Ohio Constitution, the BTA disagreed, citing the court's decision in *Dinner Bell Meats*, 12 Ohio St.3d 270, 12 OBR 347, 466 N.E.2d 909. We affirmed the BTA. *Meijer*, 75 Ohio St.3d 181, 661 N.E.2d 1056. Our reasoning in the 1996 *Meijer* case applies in this case as well.

{¶ 27} Finally, Meijer's citation of *Higbee Co. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385, is unavailing. In *Higbee*, the court rejected an appraiser's computation of obsolescence when that calculation rested upon the current owner's failure to meet sales goals it had set for itself. Id. ¶ 43, 44. Our discussion of Meijer's other points shows that its reliance on *Higbee* is misplaced. *Higbee* did not involve a situation in which the improvement of the property enhanced its utility to the business that occupied the property while not greatly increasing its marketability. To the contrary, the record in *Higbee* showed that the occupant was underperforming at the location. And no evidence showed that special adaptation of the property had reduced its value in the eyes of potential buyers. Simply put, *Higbee* does not present the special-purpose situation and is not apposite.

### III. Conclusion

{¶ 28} For the reasons stated above, we hold that the BTA did not abuse its discretion when it adopted the value as determined by the school board's appraisal, and we therefore affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J., AND PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, AND CUPP, JJ., concur.

_____

Siegel, Siegel, Johnson & Jennings Co., L.P.A., Nicholas M.J. Ray, and Jay P. Siegel, for appellant and cross-appellee.

Rich & Gillis Law Group, L.L.C., Jeffrey A. Rich, and Mark H. Gillis, for appellee and cross-appellant.

_____