[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-372.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-372

LOWE'S HOME CENTERS, INC., APPELLANT, *v.* WASHINGTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-372.]

*Taxation—Real-property valuation—Differential treatment of taxpayers may be justified by a finding that they are differently situated—Decision vacated and remanded to the BTA for a determination of whether the special-purpose doctrine applies.*

(No. 2014-0843—Submitted August 11, 2015—Decided February 4, 2016.)

APPEAL from the Board of Tax Appeals, No. 2011-1664.

————————————

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the tax-year-2010 valuation of a Lowe's Home Center store in Marietta. In that sexennial reappraisal year, the Washington County Auditor, an appellee here, determined a

value of $9,091,000 for the store. Appellant, Lowe's Home Centers, Inc., filed a complaint before the Washington County Board of Revision ("BOR"), also an appellee here, and presented an opinion seeking a reduction to $3,600,000, but the BOR retained the auditor's valuation. On appeal at the Board of Tax Appeals ("BTA"), Lowe's and the county presented competing appraisals. The BTA adopted the county's appraisal, and Lowe's has appealed.

{¶ 2} Lowe's argues that the BTA misapplied our decision in *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, by adopting the very type of appraisal in this case that the BTA correctly rejected in *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, BTA No.2011-1760, 2014 WL 2708165 (Apr. 22, 2014), which the BTA decided the same day as this case.

{¶ 3} Our decision in the *Rite Aid* appeal, issued today, ___ Ohio St.3d ___, 2016-Ohio-371, ___ N.E.3d ___, explains the significance of *Meijer Stores*, and reading the BTA decision here in light of that explanation pinpoints a significant omission in the BTA's analysis. Namely, the BTA adopted the county's appraisal in this case without addressing whether the evidence justified applying the special-purpose doctrine that was the basis for our holding in *Meijer Stores*. We therefore vacate the BTA's decision and remand the cause for further proceedings.

## FACTUAL BACKGROUND

{¶ 4} The property at issue consists of six parcels (five actual tracts of land plus a tax increment financing ("TIF") parcel.) The property amounts to 16.22 acres in Marietta improved with a 142,446-square-foot building constructed in 2002. According to the complaint, the auditor valued the property at $9,091,000, and Lowe's sought a reduction to $3,600,000. Lowe's made a presentation at the BOR hearing in support of its requested valuation; the report consisted mainly of a comparable-sale study that was well short of an appraisal.

The BOR's consultant recommended no change, and the BOR adopted that recommendation on June 15, 2011.

*The competing appraisals and theories at the BTA*

{¶ 5} Lowe's appealed to the BTA, which held a hearing on April 2, 2013. Both Lowe's and the county presented appraisals. Lowe's presented the appraisal and testimony of Patricia Costello of the Robert Weiler Company, who arrived at a value of $5,700,000 by reconciling an income approach that yielded a value of $5,295,000 with a sales-comparison approach that yielded a value of $5,700,000.

{¶ 6} The county presented the appraisal report and testimony of Karen Blosser, MAI, of U.S. Realty Consultants, Inc. (the same appraiser who testified for the county at the BTA hearing in *Rite Aid*, BTA No.2011-1760, 2014 WL 2708165). Blosser arrived at a value of $7,200,000 based on reconciling an income approach that yielded a value of $7,200,000 with a sales-comparison approach that yielded a value of $7,100,000.

{¶ 7} The differences in the two appraisals stem in significant part from competing assumptions. More than once, Costello, the property owner's appraiser, testified that she was valuing the property as if Lowe's were to leave the property in connection with a sale. She stated that "in general, if a property like this, fee simple, basically it would be vacant if it were transferring. This property is not under lease." The county's appraiser, Blosser, testified that her assumptions were the exact opposite. When asked, "So let's say this wasn't owner occupied January 1, 2010, who's the most likely occupant of the property," Blosser responded, "Lowe's would be."

{¶ 8} The selection and treatment of comparables reflected these differing approaches. Blosser placed primary reliance on "big box" store rent comparables from remote parts of the state, making adjustments for market conditions and the

location, size, and age of the building.[1]  For sale comparables, Blosser selected six comps from throughout the state involving retail stores from 62,000 square feet up to approximately 129,000 square feet.  Three are "leased fee" sales and three are "fee simple" sales, by which the appraiser means that three of the properties were subject to a lease at the time of the sale and three were not.  Although certain adjustments were made, no adjustments were made to the leased-fee sales to account for the fact that the subject was owner-occupied as of the lien date.

{¶ 9} The Costello appraisal also assembled lease comparables throughout the state, although Costello focused on "second-generation" properties where the initial user was no longer occupying the premises.  Thus, Costello's lease comparables were built in 1962 (a 20,000-square-foot portion of a former Value City converted to multitenant use, this portion now leased to a furniture store), 1992 (a 35,650-square-foot craft center in a multitenant shopping center), 1997 (a 36,000-square-foot current Value City), 1988 (a 51,282-square-foot J.C. Penney anchoring a mall), and 1990 (an 81,548-square-foot leased portion of a strip mall).  By contrast, Blosser's lease comparables were constructed in 2006 (a WalMart), 1988 (a Sam's Club), 1994 (another Lowe's), and 2008 (a Giant Eagle).

{¶ 10} The sale comparables in the Costello appraisal are two former WalMarts built in 1994 and 1995, another Lowe's built in 1993, and a Garden Ridge build in 1994.

*The BTA's decision*

{¶ 11} As in *Rite Aid*, the BTA's analysis of the appraisals is terse. The leading point of contention is the propriety of using "first-generation user-occupied comparable properties" and "long-term leased built-to-suit properties." BTA No. 2011-1664, 2014 WL 2708164, *2 (Apr. 22, 2014).  Citing our decision

---

[1] The Blosser appraisal does adduce information about the local Marietta rental market, but the information was primarily gathered by Blosser's assistant, and its validity is heavily contested by Lowe's.

in the *Meijer Stores* case and its own decision in *Target Corp. v. Lake Cty. Bd. of Revision*, BTA No. 2008-M-1088, 2011 WL 6917517 (Dec. 20, 2011), the BTA opined that "by intentionally excluding first-generation users and long-term leased build-to-suit properties within her two approaches, Costello has not properly analyzed the market * * *." BTA No. 2011-1664, 2014 WL 2708164, *2 (Apr. 22, 2014). By contrast, the BTA found that Blosser's comparables "were more appropriate given that Lowe's occupied the property as of the tax-lien date, as well as Blosser's testimony that the subject is located in a high-trafficked [sic] area which draws from a regional market." *Id*.

{¶ 12} Lowe's has appealed and claims that it is entitled to be treated similarly to the taxpayer in *Rite Aid*, ___ Ohio St.3d ___, 2016-Ohio-371 ___ N.E.3d ___.

**DIFFERENTIAL TREATMENT OF TAXPAYERS MAY BE JUSTIFIED BY A FINDING THAT THEY ARE DIFFERENTLY SITUATED—A FINDING THAT IS MISSING HERE**

*The BTA's reliance on its 2011* Target *decision is legal error*

{¶ 13} In challenging the BTA's decision in this case, Lowe's emphasizes the board's "inconsistent and discriminatory" application of R.C. 5713.03, the property-valuation statute, along with the board's "abuse of discretion" in accepting the very type of appraisal it rejected in *Rite Aid*, BTA No. 2011-1760, 2014 WL 2708165. In our decision of the county's appeal in the *Rite Aid* case, we discussed the significance of *Meijer Stores* and the special-purpose doctrine, and we affirmed the BTA's decision in that case on the grounds that the special-purpose doctrine had not been shown to be applicable to the subject property, with the result that the BTA's adoption of the property owner's appraisal was neither unreasonable nor unlawful. In the present case, the BTA went in the opposite direction from its determination in *Rite Aid* by adopting the appraisal prepared by Karen Blosser for the county.

{¶ 14} It is well settled that "[t]he weighing of evidence and the assessment of credibility as regards both of the appraisals are the statutory job of the BTA." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9. Moreover, "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *Id*. at ¶ 14.

{¶ 15} On the other hand, "we will not hesitate to reverse a BTA decision based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). Here, we find legal error primarily because of the BTA's reliance on *Meijer Stores* in conjunction with its own decision in *Target Corp.*, BTA No. 2008-M-1088, 2011 WL 6917517.

{¶ 16} The BTA's *Target* decision is contrary to part of our holding in *Rite Aid*. In *Rite Aid*, we discussed the general rule that leased comparables will typically need to be adjusted in determining the value of a subject property that is itself unencumbered by such a lease. ___ Ohio St.3d ___, 2016-Ohio-371 ___ N.E.3d ___; *see also Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2015-Ohio-4836, ___ N.E.3d ___, ¶ 36. In this case, the BTA stated that the Blosser appraisal, which did "not exclude first generation user-occupied comparable properties" and "long-term leased built-to-suit properties," was "more appropriate," relying in principal part on its *Target* decision.

{¶ 17} In its 2011 *Target* decision, the BTA rejected the property owner's appraisal and adopted an appraisal offered by the board of education that had been prepared by Karen Blosser. The BTA specifically faulted the owner's appraisal for "ma[king] significant adjustments to bring that [comparable] sale to what he believed the property would have sold for if it were garnering a market rent." *Id*. at *3. The BTA then stated its view that "the Ohio Supreme Court has rejected

the need for adjustments made by the appraiser when considering the value of properties encumbered with such above-market rental rates." *Id*.

**{¶ 18}** In *Rite Aid*, we explained why this statement is incorrect as a general rule, with the exception that adjustments may not be necessary when the special-purpose doctrine applies. *Rite Aid* at ¶ 21-22. The BTA's application of it here, in the absence of any finding concerning the special-purpose doctrine, is erroneous under *Rite Aid*. To correct the error, we find it necessary to vacate the decision below and remand for further proceedings.

*If the BTA determines that the special-purpose doctrine applies, Lowe's may appropriately be treated differently than Rite Aid*

**{¶ 19}** Lowe's invokes the guarantees of due process and equal protection, but its argument lacks merit unless it can establish that it is situated similarly to the taxpayer in *Rite Aid*. *See GTE North, Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, 770 N.E.2d 65, ¶ 22 (while legislative tax classifications must not have the effect of treating differently persons who are in all relevant respects alike, the Equal Protection Clause " 'does not require things which are different in fact * * * to be treated in law as though they were the same' "), quoting *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940). The relevant question relating to the potential difference here is whether the special-purpose doctrine can properly be applied when appraising the Lowe's store, a determination that has not yet been made.

**{¶ 20}** The case law furnishes guidance for the BTA to make the special-purpose determination on remand. In *Meijer Stores*, we had no trouble affirming the BTA's reliance on the board of education's appraisal based on the special-purpose doctrine. Several factors were significant:

- The property was brand new on the lien date, having been recently constructed at the cost of millions.

- The property was being put to apparently successful business use for the purpose for which it had been built.
- The facility was massive at 193,000 square feet, thereby raising the inference that it might not be easy to market for general retail use—an inference supported by the property owner's appraiser, who testified as to the immediate external obsolescence given the property's adaptation to Meijer's particular business use.

*See Meijer Stores*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, at ¶ 4, 7, 26.

{¶ 21} Similarly, in an earlier case involving a Meijer store, the BTA had declined to adopt the larger amount of obsolescence found by the owner's appraiser. The BTA found that there was "nothing about the * * * property [that was] obsolete or useless to the owner due to changing business conditions." *Meijer, Inc. v. Montgomery Cty. Bd. of Revision*, BTA Nos. 93-M-731, 93-M-732, and 93-M-733, 1995 WL 59106, *11 (Feb. 8, 1995). Indeed, "[t]he owner, by purchasing the land and constructing the building, evidences a market need for such a property. Therefore the costs of purchase and construction evidence that a prospective purchaser was willing to pay at least the costs of the property as newly constructed." *Id*. at *12.

{¶ 22} In *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 466 N.E.2d 909 (1984), two competing appraisals employed differing cost approaches based on their respective findings that the property was "special purpose" in nature. *Id*. at 271. The court concluded that "in utilizing the 'cost approach' for a 'special purpose' building," the appraiser "simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility." *Id*. at 272. In so holding, we acknowledged the general principle that " 'the special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique

purpose for which it was built,' " a doctrine necessary to prevent "the owner of a distinctive, but yet highly useful, building" from "escap[ing] full property tax liability." *Id*., quoting *Fed. Res. Bank of Minneapolis v. State*, 313 N.W.2d 619, 623 (Minn.1981).

{¶ 23} Where the present case fits in with this case law has not yet been determined. It will be the responsibility of the BTA as the finder of fact to make that determination on remand.

### UNDER FORMER R.C. 5713.03, THE FEE SIMPLE OF THE SUBJECT PROPERTY SHOULD BE VALUED AS IT IS, ENCUMBERED OR UNENCUMBERED

{¶ 24} In this appeal, Lowe's asserts that the fee simple of the subject property must be valued as if unencumbered. It is true that current R.C. 5713.03, as later amended, does call for the county auditors to value property "as if unencumbered." 2012 Am.Sub.H.B. No. 487, further amended by 2012 Am.Sub.H.B. No. 510. But the revisions introducing the words "as if unencumbered" were enacted during 2012, and accordingly were not in effect as of the tax-lien date for the tax year at issue, 2010. Moreover, nothing in the 2012 legislation made the new language retroactive to tax year 2010. The "as if unencumbered" language is therefore not applicable here. *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 20, fn. 1. It is clear under the version of R.C. 5713.03 that was applicable in 2010 that the effects of any encumbrances on a sale price were not to be removed when determining property value. Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2722; *see also Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 18.

{¶ 25} It is, however, true that the present property should be valued as if unencumbered by a lease, but that is because it was in fact unencumbered by a lease, not because of a general principle applicable in 2010 mandating that adjustments be made to eliminate the effect of encumbrances on the sale price of

the subject property. If the special-purpose doctrine does not apply, the value of any comparables that were subject to leases should be adjusted to achieve a true comparable for this subject property. *Steak 'n Shake*, ___ Ohio St.3d ___, 2015-Ohio-4836, ___ N.E.3d ___, at ¶ 36. On the other hand, if the special-purpose doctrine does apply, it may be appropriate to use such comparables without adjustment.

### ON REMAND, THE BTA SHOULD DETERMINE WHETHER DEPARTURES FROM UNIFORM STANDARDS IMPAIR THE CREDIBILITY OF THE BLOSSER APPRAISAL

**{¶ 26}** Lowe's separately contends that the Blosser appraisal failed to abide by the Uniform Standards of Professional Appraisal Practice ("USPAP"). Specifically, Lowe's maintains that the Blosser appraisal violates USPAP Standards Rule 1-1(c), which prohibits an appraiser from "render[ing] appraisal services in a careless or negligent manner" such as "making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affects the credibility of those results." Lowe's focuses on the interviews designed to obtain information on the local real-estate market that were performed by Blosser's assistant rather than Blosser; Lowe's also points out that the interviewees were not currently in possession of broker or real-estate-sales licenses.

**{¶ 27}** The bare fact of such violations does not by itself make it unlawful to adopt a particular appraisal. *See Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 28 ("Industry standards do not establish the legal parameters of real-property assessment for taxation purposes"). That said, the matters raised by Lowe's could be found to affect the credibility of the appraisal under all the circumstances of the case, and it is the duty of the BTA as the finder of fact to make those determinations. The BTA should give consideration to these matters on remand.

### CONCLUSION

{¶ 28} For the foregoing reasons, we vacate the decision of the BTA and remand for further proceedings consistent with this opinion.

Decision vacated,

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

The Gibbs Firm, L.P.A., Ryan J. Gibbs, and Geoffrey N. Byrne, for appellant.

Rich & Gillis Law Group, L.L.C., Kelley A. Gorry, and James R. Gorry, for appellees.

_____