[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Johnston Coca-Cola Bottling Co., Inc. v. Hamilton Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-870.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-870

JOHNSTON COCA-COLA BOTTLING COMPANY, INC., APPELLANT, *v.*

HAMILTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Johnston Coca-Cola Bottling Co., Inc. v. Hamilton Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-870.]**

*Taxation—Real-property valuation—Board of Tax Appeals did not abuse its discretion in adopting one appraisal as more persuasive than competing appraisal—Board of Tax Appeals did not act unreasonably or unlawfully in assigning credibility and weight to appraisal offered by county employee when there was no evidence of actual bias—Board of Tax Appeals' authority to correct its own errors under Ohio Adm.Code 5717-1-20 ceases when notice of appeal is filed under R.C. 5717.04—Decision affirmed in part and modified in part to correct clerical error.*

(No. 2014-1820—Submitted January 10, 2017—Decided March 14, 2017.)

APPEAL from the Board of Tax Appeals, No. 2013-5973.

_____

**Per Curiam**.

{¶ 1} This real-property-valuation case involves a manufacturing and distribution facility in Cincinnati owned and operated by appellant, Johnston Coca-Cola Bottling Company, Inc. ("Coca-Cola"). The Hamilton County Board of Revision ("BOR") rejected Coca-Cola's complaint seeking a reduction for tax year 2011 and retained the Hamilton County auditor's valuation. On appeal, the Board of Tax Appeals ("BTA") increased the value from $13,571,760 to $14,000,000 based on a new appraisal submitted by the auditor. Coca-Cola appeals to this court, asserting six propositions of law. We affirm the BTA's decision in large part, but we modify it to correct a clerical error.

## I. Facts and Procedural History

{¶ 2} The real property in this case is a 34.46-acre parcel improved with a 426,229-square-foot building. The building houses a Coca-Cola bottling and distribution facility and includes approximately 38,600 square feet of office space. The auditor valued the property at $13,571,760 for tax year 2011, a reappraisal year in Hamilton County.

{¶ 3} Coca-Cola filed a complaint with the BOR seeking a reduction in value to $6,800,000. The Cincinnati School District Board of Education filed a countercomplaint to retain the auditor's valuation.

{¶ 4} At the BOR hearing, Coca-Cola introduced the testimony and written appraisal report of John Solomon. He determined that the property's highest and best use, as improved, is its current use and, as vacant, is new industrial development. He valued the property using both the income and sales-comparison approaches. Under the income approach, he compared rents for five comparable properties and valued the subject property at $6,500,000. Under the sales-comparison approach, he identified three sales and one listing of comparable industrial buildings in the area and valued the property at $7,100,000. He then

2

reconciled the two approaches and valued the property at $6,800,000 as of December 31, 2010.

**{¶ 5}** The auditor relied on the testimony of an in-house certified general appraiser, Douglas Thoreson, at the BOR hearing. Although Thoreson did not give an opinion of the property's value, he challenged Solomon's valuation by, among other things, identifying different comparable sales. The BOR retained the auditor's valuation, and Coca-Cola appealed to the BTA.

**{¶ 6}** At the BTA hearing, Coca-Cola introduced the testimony and certified appraisal of Richard Racek, a member of the Appraisal Institute. Racek testified that the property's highest and best use was "[f]or a continued use in its present use as a bottling facility." Although Racek evaluated the property using both the sales-comparison and income approaches, his appraisal stated that "the Sales Comparison Approach is considered to be controlling in this instance." He undertook an income analysis to provide additional support to the sales-comparison approach.

**{¶ 7}** In his sales-comparison analysis, Racek relied on sales of six manufacturing buildings throughout Ohio that were sold between September 2010 and August 2013. He explained that he felt it necessary to look beyond the Cincinnati area to find enough comparables because the property at issue has a manufacturing component and he did not want to rely solely on distribution centers. He verified that all six sales had been arm's-length, fee-simple (i.e., not leased-fee) transactions that involved brokers. After making adjustments for each sale, he valued the property at $8,525,000 under the sales-comparison approach. Racek's income analysis considered 12 comparable leased properties and resulted in a valuation of $9,000,000. He reconciled the two values by giving more weight to the determination under the sales-comparison approach and arrived at a final value of $8,550,000 as of January 1, 2011.

**{¶ 8}** In response, the auditor presented testimony and a newly prepared certified appraisal from Thoreson, the auditor's in-house appraiser. Thoreson determined that the property's highest and best use, as improved, is continued use as a bottling plant and distribution center and, if vacant, is development as a commercial or industrial facility. Thoreson used both the sales-comparison and income approaches, although, like Racek, he gave greater weight to his sales-comparison findings.

**{¶ 9}** Under the sales-comparison approach, Thoreson looked for industrial buildings of more than 300,000 square feet that were in active use. He analyzed six sales of industrial buildings in the Cincinnati and Dayton areas (including two in northern Kentucky) that occurred between July 2010 and October 2012. Two of Thoreson's six comparables included a manufacturing component in addition to warehousing and distribution, and four were subject to leases. Thoreson testified that the leased properties were valid comparables because the leases provided for market rent. Thoreson's sales-comparison valuation was $14,492,000. Under the income approach, Thoreson considered eight warehouse and distribution facilities and valued the property at $13,300,000. His final, reconciled valuation was $14,000,000 as of January 1, 2011.

**{¶ 10}** The BTA increased the property's value to $14,000,000 based on Thoreson's appraisal. The BTA found that Thoreson appropriately considered sales of leased properties, and it viewed his comparable sales more favorably than those relied on by Racek, because Thoreson focused on properties near Cincinnati. The BTA concluded that Thoreson's comparables were more probative, "[c]onsidering that the subject property is operate[d] as a bottling plant, including warehouse and distribution, and has benefited from consistent maintenance since it was initially constructed in order to meet food safety standards." BTA No. 2013-5973, 2014 WL 5148342, *2 (Sept. 25, 2014). Although it acknowledged Coca-

Cola's criticisms of Thoreson's appraisal, the BTA found that his conclusions "were better supported and more consistent with the market." *Id.*

{¶ 11} The BTA's September 25, 2014 decision increased the property's value to $14,000,000 as of January 1, *2012*. On October 16, the auditor moved the BTA to correct that decision to indicate that the value of the property was determined as of January 1, *2011*. Coca-Cola filed its notice of appeal in this court on October 21, before the BTA ruled on the motion. The BTA issued a nunc pro tunc order the next day, stating that it had intended to value the subject property as of January 1, 2011. Coca-Cola filed an amended notice of appeal from the nunc pro tunc order.

## II. Analysis

### A. Considering present use

{¶ 12} In its first and third propositions of law, Coca-Cola argues that the BTA's decision was unreasonable and unlawful because it considered the property's present use in determining value. Coca-Cola complains that the BTA applied a "present use" valuation when it stated:

> Considering that the subject property is operate[d] as a bottling plant, including warehouse and distribution, and has benefited from consistent maintenance since it was initially constructed in order to meet food safety standards, we find that the sale comparables utilized by Mr. Torsion [sic] were more analogous to the subject property than those considered by Mr. Racek.

2014 WL 5148342 at *2. Coca-Cola contends that the BTA should not have found that Thoreson's appraisal was more persuasive, because Thoreson improperly considered the property's current use as a bottling plant and included active leased-fee properties among his comparables.

5

**{¶ 13}** Article XII, Section 2 of the Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." This provision generally requires a real-property valuation to ascertain "the *exchange value*" of the property. (Emphasis sic.) *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 24. Exchange value "is the amount for which [a] property would sell on the open market by a willing seller to a willing buyer * * *, *i.e.*, the sales price." *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). This stands in contrast to valuing property according to its present use. *See Rite Aid* at ¶ 24. Present-use valuation violates Article XII, Section 2 because that "method of evaluation excludes, among other factors, location and speculative value which comprise market value." *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28, 33, 289 N.E.2d 579 (1972). Ordinarily, therefore, a present-use method "cannot be made *the* basis for valuation of real property for tax assessment purposes." (Emphasis added.) *Id*.

**{¶ 14}** Although present use generally cannot be the *only* measure of value, in a proper case it may be considered in determining true value for tax purposes. In *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 466 N.E.2d 909 (1984), we held that Article XII, Section 2 "does not prohibit altogether any consideration of the present use of a property." *Id*. at 271. Coca-Cola's first and third propositions of law, therefore, are incorrect on their face, because they object to the fact that the BTA "considered" the property's present use. Under *Dinner Bell*, it was permissible for the BTA to consider the property's present use.

**{¶ 15}** The more pertinent question is whether the BTA considered the property's present-use value to the exclusion of other factors relevant to exchange value. Neither the BTA decision nor the record supports Coca-Cola's argument that the BTA adopted an impermissible present-use valuation in this case. The express purpose of Thoreson's appraisal, which the BTA adopted, was to determine the

property's "retrospective fair market value," which Thoreson defined as "[t]he most probable price" that the property would have brought "in a competitive and open market." To achieve this objective, Thoreson used the sales-comparison and income approaches, two accepted methods of analysis. And significantly, Thoreson (along with Coca-Cola's two appraisers) concluded that the property's highest and best use as improved aligns with its current use. *See Oakwood Club v. Cuyahoga Cty. Bd. of Revision*, 70 Ohio St.3d 241, 243-244, 638 N.E.2d 547 (1994).

**{¶ 16}** Although the BTA referred to the property's present use as a bottling facility, it did so in the context of deciding which comparables identified by the appraisers were "more analogous" under the sales-comparison approach. 2014 WL 514832 at *2. That determination fell within the BTA's discretion as fact-finder. *See Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 27. Coca-Cola has not shown that the BTA determined anything other than the property's probable sale price on the open market. For this reason, we reject Coca-Cola's first and third propositions of law.

**{¶ 17}** The parties' briefs include extensive discussion of the special-purpose-property doctrine, which permits present-use valuation in certain cases. *See Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 24. Under this doctrine, a property's use may form the basis of the property's value if it is " 'special purpose' in nature," meaning that it was built for a unique purpose, is in good condition, and is being used for that purpose—both presently and for the foreseeable future. *Rite Aid*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, at ¶ 29, citing *Dinner Bell*, 12 Ohio St.3d at 272, 466 N.E.2d 909. Because the BTA did not adopt a present-use valuation, there is no need for an exception to the general rule—and thus no need for us to decide whether the property at issue here is a special-purpose property.

### B. The reliability of Thoreson's appraisal

{¶ 18} In its second proposition of law, Coca-Cola presents several arguments attacking the BTA's reliance on Thoreson's appraisal. In general, Coca-Cola argues that Thoreson chose inapt comparable sales and did not adequately verify or adjust them to the characteristics of the subject property. Coca-Cola contends that the BTA should have given greater weight to the approach and conclusions of its own appraiser, Racek.

{¶ 19} Coca-Cola presents its second proposition of law as a multipronged challenge to the "competence" of Thoreson's appraisal and cites *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 17, to support its argument that its claims raise legal issues subject to de novo review. In *Worthington City Schools*, we had to decide whether a nonexpert's opinion of value was competent evidence, which was a "discrete claim[] of legal error" subject to de novo review. *Id.* The evidence here, in contrast, is unquestionably competent because Thoreson is an undisputed expert who gave a professional opinion. *See id.* at ¶ 18. The question here is the weight the BTA afforded to Thoreson's appraisal, which we review for abuse of discretion. *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, 57 N.E.3d 1126, ¶ 27.

{¶ 20} Coca-Cola attacks three aspects of Thoreson's analysis: (1) his choice of comparable properties, (2) his alleged failure to verify sale and lease data related to those properties, and (3) his alleged failure to make adjustments to the transactions he used.

### 1. Comparability

{¶ 21} Coca-Cola argues that the characteristics of three of the six properties Thoreson used were not comparable to the age, utility, or configuration of the subject property. It also points out that although its facility includes a manufacturing component, only two of Thoreson's comparison properties did. And the company

argues that the subject property has significantly more office space than any of the comparables used by Thoreson.

{¶ 22} The BTA acted reasonably when it accepted Thoreson's selection of comparable properties. Thoreson explained that he had sought and found transactions involving properties with characteristics in common with the subject property—specifically ones that occurred in the same market near the tax-lien date and that were similar in size and utility. Because the six properties he selected generally matched those criteria, we cannot conclude that the BTA abused its discretion when it relied on them. And as we explain below, to the extent that Thoreson's comparables differed from the subject property, he made adjustments or explained why adjustments were unnecessary.

*2. Verification*

{¶ 23} Coca-Cola also argues that Thoreson failed to verify certain aspects of his comparable sales. We recently recognized that "appraisers should verify transaction information with at least one party to a sale before using it as a comparable," because "[v]erification ensures that records of the transaction are accurate, and * * * provides ' "insight into the motivation behind each transaction." ' " *Westerville City Schools*, 146 Ohio St.3d 412, 2016-Ohio-1506, 57 N.E.3d 1126, at ¶ 53, quoting *Hervey v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2012-Q-3114, 2013 WL 4680872, *2 (Aug. 20, 2013), quoting Appraisal Institute, *The Appraisal of Real Estate* 304 (13th Ed.2008).

{¶ 24} Coca-Cola has not shown that Thoreson failed to meet this basic requirement; evidence showed that he verified the sales with the grantees involved and solicited and received information from brokers about the transactions. We find unavailing Coca-Cola's argument that Thoreson did not provide sufficient detail about the sales. Coca-Cola can only speculate that Thoreson failed to uncover material facts concerning the sales. We defer to the BTA in this instance because evidence in the record supports its finding.

{¶ 25} Coca-Cola also argues that Thoreson's appraisal was deficient because he did not personally verify the nationwide sales of 20 bottling facilities that he discussed in his report. This argument misconstrues the significance of those sales, because Thoreson did not use them to determine the property's value. He referred to the nationwide sales only because there had been no recent sales of bottling facilities in the Cincinnati area, and he did so only after he had determined value under the sales-comparison approach using the sales of six local properties, which he verified. Because the nationwide sales served only as a check on the validity of his separate analysis, the fact that he did not personally verify them does not invalidate his overall conclusion.

### 3. Adjustments

{¶ 26} Coca-Cola argues that Thoreson's analysis was flawed because he did not make adjustments to account for the age of the subject property or the leases that encumbered four of his six comparable properties.

{¶ 27} Thoreson explained at the BTA hearing why he made no adjustment for age even though parts of the subject property were originally constructed at least 20 years before four of his six comparables: the subject property is a well-maintained "food distribution type facility" that remains comparable to the newer facilities. The BTA did not abuse its discretion in accepting this rationale, because Thoreson personally inspected the property and was familiar with its condition.

{¶ 28} As for Thoreson's decision not to make adjustments for the leases that encumbered some of the comparable properties, both he and Racek testified at the BTA hearing that adjustments are not necessary if properties are encumbered by current-market-rate leases. Thoreson testified that he believed no adjustments were necessary for this reason. Because Coca-Cola presented no evidence that contradicted his conclusion, it was reasonable for the BTA to rely on his statement, even though he did not review the leases themselves.

{¶ 29} Coca-Cola's argument that Thoreson failed to make necessary adjustments is unavailing. His report and testimony show that he made adjustments based on numerous factors, such as amount of office space, ceiling height, number of loading docks, and visibility from the freeway. Indeed, after considering his six comparables, Thoreson valued the subject property at "the bottom of the range." Although the values of his comparables ranged from $34.28 to $48.54 per square foot, with an average value of $38.86 per square foot, he valued Coca-Cola's property at $34 per square foot. Because it is apparent that Thoreson made adjustments and because Coca-Cola identified no specific error in his approach, Coca-Cola has not established that the BTA acted unreasonably or unlawfully in accepting his opinion of value.

{¶ 30} We reject Coca-Cola's second proposition of law because Coca-Cola has not shown that the BTA abused its discretion by finding Thoreson's appraisal to be more persuasive. *See Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 18-19.

### C. Appraisal by a county employee

{¶ 31} In its fourth proposition of law, Coca-Cola argues that the BTA erred by relying on Thoreson's testimony and report, because, according to Coca-Cola, he was "inherently biased" as an employee of the Hamilton County auditor. Coca-Cola argues that "the BTA should have rejected the Thoreson report or given his report little weight."

{¶ 32} As an initial matter, Coca-Cola does not challenge the *admissibility* of Thoreson's testimony and report, nor can it, because Coca-Cola did not challenge the admissibility of the testimony and report at the BTA. Instead, Coca-Cola argues that Thoreson was not "a credible and reliable expert appraiser" based on his status as a county employee. This proposition, therefore, asks us to decide whether the BTA acted unreasonably or unlawfully in assigning credibility and weight to Thoreson's opinions. We review these determinations of the BTA for abuse of discretion.

*Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, ¶ 22.

**{¶ 33}** Coca-Cola's claim fails because it has not shown that Thoreson's status as a county employee prevented him from rendering an unbiased appraisal. Coca-Cola argues that Thoreson could not be "a disinterested and unbiased third party" appraiser under R.C. 4763.12(C)(4) because he receives a regular salary from the county. According to Coca-Cola, Thoreson's employment relationship necessarily gives him a "personal interest or bias with respect to the parties involved." This argument has two flaws.

**{¶ 34}** First, R.C. 4763.12 does not suggest that a county-employed appraiser cannot provide an unbiased opinion of value. In fact, the statute suggests the opposite: R.C. 4763.12(A) provides that "[a] person licensed or certified under this chapter may be retained *or employed* to act as a disinterested third party in rendering an unbiased valuation or analysis of real estate." (Emphasis added.) Because the statute permits an appraiser to be employed "to act as a disinterested third party" capable of "rendering an unbiased valuation," an appraiser's status as an employee of a party cannot, by itself, establish bias. And because Coca-Cola merely points to Thoreson's employee status without identifying any evidence of actual bias, its claim falls short.

**{¶ 35}** And second, Coca-Cola's main criticism—that Thoreson had a personal financial incentive to render an opinion favorable to his employer—applies equally to Coca-Cola's own appraisers, who presumably were paid for their services. Nothing in the record suggests that any of the appraisers involved in this case were biased because they received payment for their professional services. *But see Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 157-158, 573 N.E.2d 661 (1991) (upholding BTA's decision to reject evidence presented by appraiser because of contingency-fee arrangement). Thoreson's status as a county employee

was simply one factor to be considered by the BTA in assessing the evidence presented.

{¶ 36} Coca-Cola has not shown that the BTA abused its discretion in assigning credibility and weight to Thoreson's testimony and report. Coca-Cola has provided no persuasive authority that supports a bright-line rule that would minimize the weight assignable to an appraisal performed by a county-employed appraiser. And although Coca-Cola cross-examined Thoreson regarding his status within the auditor's office, it elicited no evidence showing that he was incapable of honoring the professional standards applicable to certified appraisers. We therefore reject Coca-Cola's fourth proposition of law.

### D. Correction of clerical error

{¶ 37} In its fifth and sixth propositions of law, Coca-Cola argues that the BTA's September 25, 2014 decision was unlawful and unreasonable because it assigned a value to the property for the wrong tax year. Indeed, the parties agree that the BTA should not have valued the property as of January 1, 2012, because the pleadings and evidence all pertained to the property's value as of January 1, 2011. The BTA itself acknowledged the error, explaining in its nunc pro tunc order that it had "intended to find value for the subject property as of January 1, 2011." The real question on appeal, therefore, is not whether the BTA erred but whether it had the power to correct its error after Coca-Cola filed its notice of appeal to this court.

{¶ 38} "[A]dministrative tribunals possess inherent authority to correct errors in judgment entries so that the record speaks the truth." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-164, 656 N.E.2d 1288 (1995). *See also* Ohio Adm.Code 5717-1-20 ("Amendments to a final order, arising out of an oversight, error or omission, may be made by the board or on the motion of any party"). This does not mean, however, that the BTA's power to correct its errors is unrestrained. One restraint is that the BTA is subject to the general principle of administrative law that it " 'has control over its decisions until the actual institution of an appeal or the

expiration of the time for an appeal.' " *1495 Jaeger, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 222, 2012-Ohio-2680, 970 N.E.2d 949, ¶ 15, quoting *Natl. Tube Co. v. Ayres*, 152 Ohio St. 255, 89 N.E.2d 129 (1949), paragraph one of the syllabus. In *1495 Jaeger*, we held that "the BTA loses jurisdiction to modify or vacate its decision if there is a timely appeal from that decision to a court pursuant to R.C. 5717.04 or if the appeal period expires without an appeal having been filed." *Id.*

{¶ 39} To be sure, the question here is different from the one presented in *1495 Jaeger*. In *1495 Jaeger*, we held that the BTA lacked jurisdiction to rule on a substantive legal question that was presented to it more than five months after it had issued a decision in the case. *Id*. at ¶ 1-3. This case, in contrast, asks whether the BTA had jurisdiction to enter a nunc pro tunc order to correct a clerical error after an appeal had been filed. Despite these differences, the general principle from *1495 Jaeger*—that a notice of appeal divests the BTA of jurisdiction to modify its decision—applies here, because allowing the BTA to correct a decision that is on appeal would be inconsistent with this court's authority to review the decision. *See State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978); *see also State v. Smith*, 2d Dist. Greene No. 2010-CA-63, 2011-Ohio-5986, ¶ 7 ("Although a court generally may issue a nunc pro tunc entry [at] any time, * * * a notice of appeal divests a trial court of jurisdiction to do so").

{¶ 40} We hold, therefore, that the BTA's authority to correct its own errors under Ohio Adm.Code 5717-1-20 ceases when a notice of appeal is filed under R.C. 5717.04. Because the BTA lacked jurisdiction to correct its clerical error in this case, the BTA's October 22, 2014 order was a nullity.

{¶ 41} Because no one disputes the clerical error, we exercise our authority under R.C. 5717.04 to modify the BTA's September 25, 2014 decision to refer to the January 1, 2011 tax-lien date. We affirm the decision in all other respects.

Decision affirmed as modified.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, Stephen M. Nowak, and Glen E. Littlejohn, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Thomas J. Scheve, Assistant Prosecuting Attorney, for appellee Hamilton County auditor.

David C. DiMuzio, Inc., and David C. DiMuzio, for appellee Cincinnati School District Board of Education.

_____