[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-1974.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1974

LOWE'S HOME CENTERS, INC., ET AL., APPELLANTS, *v.* WASHINGTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-1974.]

*Taxation—Real-property valuation—Board of Tax Appeals failed to evaluate and weigh property-rights-conveyed analysis contained in appraisal report of county's appraiser—Collateral estoppel precludes inquiry into whether subject property is "special purpose" in nature—Decision vacated and cause remanded.*

(No. 2015-2109—Submitted February 13, 2018—Decided May 22, 2018.)

APPEAL from the Board of Tax Appeals, No. 2014-4606.

_____

**Per Curiam.**

**{¶ 1}** In this real-property-valuation case, the Board of Tax Appeals ("BTA") relied on an appraisal report furnished by appellees Washington County Board of Revision ("the BOR") and Washington County auditor (collectively, the

"county") to value a property owned by appellants, Lowe's Home Centers, Inc./Lowe's Home Centers, L.L.C. (collectively, "Lowe's"). Although Lowe's presented its own appraisal report, the BTA found that the county's report constituted the most competent and probative evidence of the value of the subject property for tax year 2013. Lowe's has appealed.

**{¶ 2}** We conclude that our decisions in *Steak 'N Shake, Inc. v. Warren Cty. Bd. of Revision*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, and *Lowe's Home Centers, Inc. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266, provide the proper guideposts for resolving this controversy. The BTA, however, did not take this trilogy into account, and understandably so; at the time of the BTA's decision, *Steak 'N Shake* had just been decided and *Rite Aid* and *Lowe's* had not yet been decided. Because the BTA, as the finder of fact, has yet to evaluate the evidence in this case in light of the legal standards articulated in those decisions, we vacate its decision and remand the cause for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

**{¶ 3}** The property at issue consists of five parcels constituting roughly 16 acres of land in Marietta. The property is improved with a 142,446-square-foot home-improvement store. The store is owner-occupied by Lowe's and was constructed in 2002. For tax year 2013, the county auditor valued the property at $9,595,570; Lowe's challenged that valuation with a decrease complaint.

*BOR proceedings*

**{¶ 4}** At the BOR hearing, Lowe's presented an appraisal report and supporting testimony from Richard G. Racek Jr., a certified appraiser. Racek's report describes the appraisal as valuing the fee-simple interest in the property. He opined that the property's highest and best use, as improved, is its continued retail use and, as vacant, is a permitted retail use.

2

**{¶ 5}** Racek performed a sales-comparison and an income approach to value. For the sales-comparison approach, Racek evaluated nine transactions involving big-box stores located throughout Ohio. Six involved unoccupied properties that sold in the absence of a lease. The remaining three involved properties that sold with a lease in place. When appropriate, Racek made adjustments to the properties to account for such characteristics as location, condition, land-to-building ratio, and rental rate.

**{¶ 6}** For the income approach, Racek evaluated 20 properties. Eleven of these involved properties with a lease in place, five involved properties with an asking rental rate, and the remaining four involved Lowe's stores that were leased as of the January 1, 2013 tax-lien date. Racek noted adjustments to the rent comparables when appropriate.

**{¶ 7}** After reconciling the two approaches, Racek opined a value of $5,700,000 as of January 1, 2013.

**{¶ 8}** The BOR retained the county auditor's valuation of $9,595,570, in accord with the recommendation of its technical adviser.

*BTA proceedings*

**{¶ 9}** At the BTA hearing, the county presented an appraisal report and supporting testimony from Thomas D. Sprout, a certified appraiser. According to Sprout, he appraised the property's unencumbered, fee-simple interest. He opined that the property's highest and best use, as improved, is its existing use and, as vacant, is a retail building consistent with the locality's zoning provisions.

**{¶ 10}** Sprout performed a sales-comparison and an income approach to value. For the sales-comparison approach, Sprout attempted "to find big box users, retail users, that were occupying their building at the point of sale." He evaluated seven transactions. Five involved properties where the sale occurred with a lease in place. He described the sixth transaction as the sale of a Costco Wholesale store without a lease in place. But on cross-examination, counsel for Lowe's presented

to Sprout evidence that the sixth transaction was instead a buyout of a ground lease,[1] to which Sprout responded that had he known that the sale was a buyout of a ground lease, he would not have included it in his report. The seventh transaction involved a sale without a lease in place, but Sprout stated that he gave this sale no weight. When appropriate, Sprout noted adjustments to the comparables for property rights conveyed, market conditions, location, and building size and condition.

{¶ 11} For the income approach, Sprout evaluated eight properties. He strove to identify "occupied units where leases were recently renewed" and instances when "second time users [were] coming into the property." Sprout noted whether the location and condition of each rent comparable was superior, inferior, or similar to those of the subject property. He then noted whether the rent for each comparable fell on the lower, middle, or upper end of the range as compared to what the subject property could rent for if it was not owner-occupied.

{¶ 12} In his final reconciliation, Sprout gave equal weight to the sales-comparison and income approaches, opining a value of $8,800,000 as of January 1, 2013.

{¶ 13} The BTA concluded that Sprout's appraisal provided the most competent and probative evidence of the subject property's value. The BTA found that in contrast to Racek's heavy reliance on second-generation sales, "Sprout's inclusion of first-generation properties and build-to-suit properties subject to long-term leases was most appropriate, given that [Lowe's] occupied the subject property as of the tax lien date."[2] BTA No. 2014-4606, 2015 WL 11018613, *3

---

[1] " 'A 'ground lease' is a 'lease that grants the right to use and occupy land.' " *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, ¶ 1, fn. 1, quoting American Institute of Real Estate Appraisers, *The Dictionary of Real Estate Appraisal* 146 (1984).

[2] A "second-generation space" is a "building or space used by a tenant other than the original tenant," Appraisal Institute, *The Dictionary of Real Estate Appraisal* 210 (6th Ed.2015), whereas a "first-generation space" is a "building or space designed to be functionally and economically efficient for the original tenant or a similar class of tenants over a period of time, during which the space retains its original utility and desirability," *id.* at 92.

(Dec. 3, 2015). It found persuasive Sprout's characterization of the property as being situated in a "regional hub." *Id.* at *4. And it found that Sprout's selection of comparable properties and his adjustments to those properties were proper. The BTA also rejected Lowe's' argument that Sprout's appraisal—especially his reliance on comparable sales of lease-encumbered properties—violated R.C. 5713.03 as amended by 2012 Am.Sub.H.B. No. 487 ("H.B. 487"), which directs county auditors to value property in its "fee-simple estate, as if unencumbered."

{¶ 14} After the BTA issued its decision, Lowe's filed a motion urging the BTA to reconsider its decision in light of *Steak 'N Shake*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, which we decided about a week before the BTA issued its decision. But given the looming deadline to appeal, Lowe's filed its notice of appeal to this court instead of waiting for the BTA to rule on the motion.[3]

## STANDARD OF REVIEW

{¶ 15} We will affirm a BTA decision that is reasonable and lawful. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We review de novo the BTA's resolution of legal issues, but we will defer to the BTA's findings concerning the weight of the evidence if the record supports them. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 13.

## DISCUSSION

### *First proposition of law*

{¶ 16} In its first proposition of law, Lowe's argues that the BTA erred in finding that Sprout's appraisal provided the most competent and probative evidence

---

[3] While this appeal was pending, the BTA purported to grant reconsideration and to vacate its original decision pending further proceedings before the BTA. No party, however, argues that we should give effect to the BTA's grant of reconsideration. Indeed, the BTA lost jurisdiction over the case when Lowe's filed its notice of appeal, meaning that the BTA's grant of reconsideration was a nullity. *See Johnston Coca-Cola Bottling Co., Inc. v. Hamilton Cty. Bd. of Revision*, 149 Ohio St.3d 155, 2017-Ohio-870, 73 N.E.3d 503, ¶ 38-40.

of value. According to Lowe's, the BTA should have disregarded Sprout's appraisal because he placed significant reliance on sales of comparable properties with leases in place (what Lowe's calls "leased fee sales") in contravention of R.C. 5713.03 and this court's case law.

{¶ 17} Under the H.B. 487 version of R.C. 5713.03 (which is the version of the statute applicable in this case), county auditors were required to determine "the true value of *the fee simple estate, as if unencumbered of* each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon." (Emphasis added to indicate words inserted by H.B. 487.) *See also Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 18 (the H.B. 487 version of R.C. 5713.03 applies to real-estate valuations for tax year 2013). In *Terraza*, we explained that H.B. 487's amendment to R.C. 5713.03 "means that the BTA ha[s] to determine the value of the subject property's unencumbered fee-simple estate." *Id.* at ¶ 39.

{¶ 18} Lowe's and the county differ on what this amendment encompasses. Lowe's asserts that a lease constitutes an encumbrance, whereas the county asserts that liens and easements constitute encumbrances but that leases do not. Lowe's is correct, as is clear from a number of our real-property-valuation decisions. *See Terraza* at ¶ 1 ("lease-encumbered properties"); *Rite Aid*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, at ¶ 19 ("property encumbered by a lease"); *Lowe's*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266, at ¶ 25 ("unencumbered by a lease"); *Steak 'N Shake*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, at ¶ 33 (same).

{¶ 19} In view of these decisions, it is plain that a lease is an encumbrance and that R.C. 5713.03's directive to value the realty "as if unencumbered" means to value the realty as if it were free of encumbrances such as leases. It follows that a valuation of a lease-encumbered property that has not been adjusted for the presence of the lease runs afoul of R.C. 5713.03. According to Lowe's, the BTA

violated R.C. 5713.03 by relying on Sprout's appraisal, which in Lowe's' view constitutes a "leased fee valuation" because Sprout relied on comparable sales of lease-encumbered properties. But Lowe's' argument runs into two difficulties.

**{¶ 20}** First, Sprout himself said that he conducted a market-value appraisal of the subject property as an unencumbered, fee-simple estate. The fact that he appraised the property as such is not unexpected because it is, in fact, unencumbered by a lease. Second, the language of R.C. 5713.03 applies to the valuation of the property itself—it does not prescribe any standards to be applied in a comparable-sales analysis. Lowe's' statutory argument, in effect, would have us insert words that the General Assembly did not use. We decline to do so. *See Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 28-29, 263 N.E.2d 249 (1970) ("Neither the Board of Tax Appeals, nor this court, may legislate to add a requirement to a statute enacted by the General Assembly").

**{¶ 21}** Notwithstanding Sprout's ostensible compliance with R.C. 5713.03, Lowe's argues that a more searching inquiry into Sprout's appraisal shows that *in substance* he valued the property as if it were encumbered by a lease and that he relied on comparable sales of lease-encumbered properties only to inflate the subject property's value. In translating this assertion to a claim of legal error, Lowe's places principal reliance on a trilogy of decisions of this court: *Steak 'N Shake*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535; *Rite Aid*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177; and *Lowe's*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266.

**{¶ 22}** In *Steak 'N Shake*, we ruled that "[b]ecause the encumbrance of a lease may affect market value, sale prices of leased properties generally must be adjusted when determining the value of comparable unleased properties." *Id.* at ¶ 34-35 (intervening subheading). There, a county's appraiser valued an owner-occupied property based in part on a sales-comparison approach that relied solely on unadjusted comparable sales of lease-encumbered properties. *Id.* at ¶ 13-14.

After the BTA adopted the appraiser's valuation, the owner appealed and faulted the appraiser for "fail[ing] to adjust the sales prices of the comparable properties to remove the effect that long-term leases would have had on those prices." *Id.* at ¶ 33. One of amicus curiae's arguments in response was that the approach of the county's appraiser was justified under this court's pre-H.B. 487 line of decisions, *e.g., HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 19-20 (collecting cases), which stood for the proposition that the price from a recent arm's-length sale need not be adjusted to account for the presence of a lease.

**{¶ 23}** We agreed with the owner, finding that the BTA erred by accepting the value opined by the county's appraiser: "*Precisely because* the encumbrances affect sale price, and *precisely because* the difference in sales price is a difference in value for tax purposes, [the county's appraiser] was required to adjust the sale prices for his comparable properties to reflect the fact that the subject property was not encumbered and would therefore likely sell for less." (Emphasis sic.) *Id.* at ¶ 36.

**{¶ 24}** A similar dispute arose in *Rite Aid*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, in which it was argued that comparable sales of lease-encumbered properties do not need to be adjusted in determining the value of an unencumbered property. Relying on *Steak 'N Shake*, we rejected that argument and reaffirmed "the general rule," *Rite Aid* at ¶ 22, that when a "lease affects the sale price and value, the leased-fee comparable ought to be adjusted when the subject property has no lease; the adjustment would remove the effect of the lease on the sale price so that the sale can indicate what the unencumbered property would sell for," *id.* at ¶ 20.

**{¶ 25}** Last in the trilogy is *Lowe's*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266, which involved the same property at issue here. In that case, we reiterated the principles of *Steak 'N Shake* but remanded the case to the BTA to

determine whether the special-purpose doctrine applied.[4]  *Id.* at ¶ 18.  We observed that "[i]f the special-purpose doctrine does not apply, the value of any comparables that were subject to leases should be adjusted to achieve a true comparable for this subject property * * * [but] if the special-purpose doctrine does apply, it may be appropriate to use such comparables without adjustment."  *Id.* at ¶ 25.  On remand, the BTA determined that the property did not qualify as a special-purpose property.  *Lowe's Home Centers, Inc. v. Washington Cty. Bd. of Revision*, BTA No. 2011-1664, 2016 Ohio Tax LEXIS 1270, *12-13 (June 10, 2016) ("*Lowe's Remand*").

**{¶ 26}** In this case, Sprout performed the sales-comparison approach by evaluating seven transactions, five of which indisputably involved lease-encumbered properties.  According to the county, Sprout made appropriate adjustments to these five sales in conformity with *Steak 'N Shake*, *Rite Aid*, and *Lowe's*.  Specifically, the county cites Sprout's statement that he made appropriate adjustments for "property rights conveyed."  During oral argument, the county commented on Sprout's approach, explaining that he essentially performed a two-step analysis: first, he determined whether the rent for each particular comparable property was above, below, or at market at the time of sale; second, he evaluated how the rent for each particular property compared to what the subject property could generate.

**{¶ 27}** As to the first step, Sprout stated that the rent for each of the five comparable properties was "at market" at the time of the sale.  As to the second step, Sprout noted that the rent for the first property was "lower than what we believe the subject property could achieve and would represent a lower value," necessitating an upward adjustment.  For the second, third, and fourth properties,

---

[4] "Under this doctrine, a property's use may form the basis of the property's value if it * * * was built for a unique purpose, is in good condition, and is being used for that purpose—both presently and for the foreseeable future."  *Johnston Coca-Cola Bottling Co.*, 149 Ohio St.3d 155, 2017-Ohio-870, 73 N.E.3d 503, at ¶ 17.

Sprout noted that the rents were "higher than what we believe the subject property could achieve and would represent higher values," necessitating a downward adjustment. And for the fifth property, Sprout stated that an upward adjustment was required because there was a recently negotiated lease.

{¶ 28} It is possible that a finder of fact might regard Sprout's property-rights-conveyed analysis as competent and probative evidence of value, thereby permitting the conclusion that Sprout's adjustments are in keeping with *Steak 'N Shake*, *Rite Aid*, and *Lowe's*. But the difficulty here is that the BTA did not make any express findings about Sprout's property-rights-conveyed analysis. True, the BTA found that "Sprout's selection of comparable properties and the adjustments he made thereto, as highlighted in his appraisal report, were appropriate." 2015 WL 11018613 at *4. Thus, one might infer that the BTA indirectly evaluated Sprout's property-rights-conveyed analysis. But that inference is vulnerable to challenge because the BTA's decision does not mention *Steak 'N Shake*, *Rite Aid*, or *Lowe's*. Any consideration that the BTA may have given to Sprout's adjustments was therefore not done with an eye toward whether his property-rights-conveyed analysis conformed to that trilogy of decisions.

{¶ 29} Indeed, it is questionable whether the BTA regarded the adjustments as necessary at all given its citation to *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, and *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830. Based on those pre-H.B. 487 decisions, in which we held that a property's sale price does not require an adjustment to account for the presence of an encumbrance in determining that property's true value, the BTA's decision could be read as endorsing the notion that the sales of lease-encumbered properties considered in a sales-comparison approach likewise do not require adjustments to account for encumbrances.

10

**{¶ 30}** At bottom, the BTA's key job in a battle-of-the-appraisals dispute is to weigh evidence and assess the credibility of the appraisals. *See EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9. "[T]he BTA must engage in sufficient discussion of the evidence to permit the court on appeal to determine whether the BTA acted reasonably and lawfully." *Lutheran Social Servs. of Cent. Ohio Village Hous., Inc. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 125, 2017-Ohio-900, 79 N.E.3d 541, ¶ 12. Because the BTA has yet to evaluate and weigh the property-rights-conveyed analysis contained in Sprout's appraisal report under the appropriate legal standards, we vacate the BTA's decision and remand the case so that the BTA can carry out this duty.

*Second proposition of law*

**{¶ 31}** In its second proposition of law, Lowe's argues that its property does not meet the requirements of the special-purpose doctrine. It further maintains that treating the property as "special purpose" in nature would violate its equal-protection rights under both the Ohio and United States Constitutions. The BTA's decision contains no discussion of the special-purpose doctrine. It thus appears that Lowe's has asserted this argument as a protective measure to foreclose the BTA from making such a special-purpose finding in the event of a remand. For the reasons that follow, we need not reach the merits of this proposition of law.

**{¶ 32}** After the county filed its merit brief—but before Lowe's filed its reply brief—the BTA issued its decision on remand in *Lowe's*, finding that the subject property did not qualify for special-purpose treatment. *Lowe's Remand*, 2016 Ohio Tax LEXIS 1270, at *13 ("we are constrained to conclude that it has not been demonstrated by either appraiser that the subject property constitutes a special purpose property"). Relying on this finding of the BTA, Lowe's has asserted in its reply brief that the doctrine of res judicata requires this court to conclude that the special-purpose doctrine does not apply to the property.

**{¶ 33}** Collateral estoppel is an aspect of res judicata, *see Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995), and it " 'precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action,' " *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 277, 2017-Ohio-8845, 95 N.E.3d 359, ¶ 9, quoting *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969). "[C]ollateral estoppel may under appropriate circumstances be applied to decisions of the BTA." *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 36, 41, 684 N.E.2d 312 (1997), *overruled on other grounds*, *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 23. In the real-property-valuation context, we have held that "the determination in an earlier year of a discrete factual/legal issue that is common to successive tax years may bar relitigation of that discrete issue in the later years." *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 17. Thus, for instance, we have held that collateral estoppel may be applied to bar the relitigation of a sale's arm's-length nature. *See New Winchester Gardens* at 42.

**{¶ 34}** Applying these principles, we conclude that collateral estoppel precludes us from inquiring into whether the subject property is special purpose in nature. First, the BTA's decision on remand shows that the issue was actually litigated in the prior proceeding.[5] Second, as each party's counsel stated at oral argument, the property at issue in the prior proceeding is the same property at issue here. And finally, Lowe's Home Centers, Inc., and the county were parties to the prior proceeding and are parties to this proceeding.

**{¶ 35}** One last bit of analysis remains, however, because Lowe's Home Centers, L.L.C., which appears on the complaint alongside Lowe's Home Centers,

---

[5] The BTA's online docketing system shows that its decision on remand was not appealed. *See* https://ohio-bta.modria.com/casedetails/46706 (accessed Mar. 23, 2018).

Inc., as a property owner and is listed on the BOR's and BTA's decisions of value, does not appear to have participated as a party in the prior proceeding. We have stated that collateral estoppel "operates 'only when there is an identity of issues and an identity of parties or their privies in both the first and the second suit.' " *Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 17, quoting *Whitehead*, 20 Ohio St.2d at 113, 254 N.E.2d 10. The presence of Lowe's Home Centers, L.L.C., as a party here means that the parties to this proceeding are not entirely identical to the parties to the prior proceeding. But we conclude that there is no bar to applying collateral estoppel under these circumstances.

**{¶ 36}** We have recognized that a "party precluded [by collateral estoppel] from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked [a] full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue." *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977). The nonmutual application of collateral estoppel in a case like *Hicks* furnishes authority for allowing the doctrine to operate here. As evidenced by the existence of adversarial briefing during the remand proceedings, *see Lowe's Remand*, 2016 Ohio Tax LEXIS 1270, at *2, we conclude that the county had a full and fair opportunity to litigate the special-purpose issue on remand, and we are aware of no other circumstances that would justify allowing the county an opportunity to relitigate that issue here.

*The BTA did not adopt a present-use valuation*

**{¶ 37}** Lastly, we address Lowe's' assertion that the BTA performed an unconstitutional present-use valuation in adopting Sprout's appraisal. "Present-use valuation violates Article XII, Section 2 [of the Ohio Constitution] because that 'method of evaluation excludes, among other factors, location and speculative value which comprise market value.' " *Johnston Coca-Cola Bottling Co., Inc. v.*

*Hamilton Cty. Bd. of Revision*, 149 Ohio St.3d 155, 2017-Ohio-870, 73 N.E.3d 503, ¶ 13, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28, 33, 289 N.E.2d 579 (1972). But while present use cannot ordinarily be *the* criterion of value, the BTA can consider it as a noncontrolling factor. *Johnston Coca-Cola Bottling Co.* at ¶ 14. Here, the BTA devoted an entire paragraph of its analysis to discussing the property's location, agreeing with Sprout that the property was situated in a regional hub. 2015 WL 11018613 at *4. The BTA's discussion of the property from a locational standpoint defeats Lowe's' argument that Sprout considered the property's present use as the only criterion of value.

## CONCLUSION

**{¶ 38}** For the foregoing reasons, we vacate the BTA's decision and remand the cause to the BTA for evaluation and weighing of the property-rights-conveyed analysis contained in Sprout's appraisal report under the appropriate legal standards.

Decision vacated

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, FRENCH, and FISCHER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE and DEGENARO, JJ.

_____

**KENNEDY, J., dissenting.**

**{¶ 39}** Because the majority's conclusion is based on speculation and possibility rather than a determination that it affirmatively appears from the record that the decision of the Board of Tax Appeals ("BTA") is unreasonable or unlawful, and because this court should not disturb a value determination of the BTA that is supported by evidence in the record, I dissent and would affirm the BTA's decision in this case.

**{¶ 40}** At issue in this case is whether the BTA's valuation of property owned by appellants, Lowe's Home Centers, Inc./Lowe's Home Centers, L.L.C. (collectively, "Lowe's"), is consistent with our holding in *Steak 'N Shake, Inc. v. Warren Cty. Bd. of Revision*, that in determining the value of an unencumbered parcel of realty, the sale prices of encumbered parcels used as comparables must be adjusted "to remove the effect that long-term leases would have had on those prices." 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, ¶ 33. Importantly, the need for adjustment is not a result of any change in the law; rather, "the present property should be valued as if unencumbered by a lease * * * because it was in fact unencumbered by a lease." *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266, ¶ 25. Adjustments are required because encumbrances affect sale price and therefore affect value for tax purposes. *Steak 'N Shake* at ¶ 36. For example, as we noted in *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, the rent for a build-to-suit property may incorporate building costs, and that increased rental rate may result in a higher sale price. 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 21.

**{¶ 41}** The subject property in this case is not encumbered by a lease; therefore, the sale prices of comparable properties that are subject to leases must be adjusted so that they are similarly valued as if unencumbered. And the county's appraiser, Thomas Sprout, did just that. His appraisal report and testimony indicate that in evaluating comparable properties that were subject to leases, he determined whether the rent for each property was above, below, or at market rate at the time of sale, compared the rent that each comparable property generated to what the subject property could generate, and adjusted each valuation upward or downward.

**{¶ 42}** Sprout determined that the rents for the five comparable properties were "at market" at the time the properties sold. Then, "adjustments were made to the leased fee interest of those sales versus what [Sprout] determined to be [the value of] the subject property." He opined that comparables two, three, and four

had higher rents being paid than the subject property could generate, and those sale prices were "all adjusted downward to reflect the higher rents that those particular * * * buildings were generating." Sprout also adjusted the sale price of comparable one downward to reflect that it was encumbered by a lower rental rate than the subject property could generate, and he adjusted the price of comparable five downward to reflect that it was burdened by a recently negotiated lease.

{¶ 43} Sprout's analysis therefore comports with this court's holding in *Steak 'N Shake* that the sale price of an encumbered parcel used as a comparable must be adjusted to remove the effect that the lease would have had on that price. The BTA reviewed this evidence and the appraisal presented by Lowe's and found "Sprout's appraisal report to be the most competent and probative evidence of the subject property's value." BTA No. 2014-4606, 2015 WL 11018613, *3 (Dec. 3, 2015).

{¶ 44} The majority acknowledges that "[i]t is possible that a finder of fact might regard Sprout's property-rights-conveyed analysis as competent and probative evidence of value, thereby permitting the conclusion that Sprout's adjustments are in keeping with *Steak 'N Shake*, *Rite Aid*, and *Lowe's*." Majority opinion at ¶ 28. Or, to put it more plainly, the majority recognizes that there is sufficient evidence in the record to support the BTA's valuation. That conclusion should end the analysis.

{¶ 45} The limited nature of our review is established by R.C. 5717.04, which provides that this court "shall affirm" the decision of the BTA if it is reasonable and lawful, and we must defer to the BTA's factual findings if they are supported by reliable and probative evidence in the record, *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 145 Ohio St.3d 115, 2016-Ohio-78, 47 N.E.3d 144, ¶ 16. Accordingly, the fact that a reasonable fact-finder could rely on Sprout's appraisal and testimony as competent and probative

evidence of value necessarily means that the BTA's valuation is reasonable and lawful and that its decision should be affirmed.

{¶ 46} Similarly, the majority recognizes that "one might infer that the BTA indirectly evaluated Sprout's property-rights-conveyed analysis" from the BTA's statement that it had found that " 'the adjustments [Sprout] made * * * were appropriate,' " but the majority then rejects that inference based on the BTA's failure to mention our decisions in *Steak 'N Shake*, *Rite Aid*, and *Lowe's*, stating that "[a]ny consideration that the BTA may have given to Sprout's adjustments was therefore not done with an eye toward whether his property-rights-conveyed analysis conformed to that trilogy of decisions." Majority opinion at ¶ 28, quoting 2015 WL 11018613 at *4. The majority's reasoning, however, founders on its own recognition that the BTA did not have the benefit of those decisions at the time it valued the subject property; *Steak 'N Shake* had only just been decided and *Rite Aid* and *Lowe's* had not yet been decided. *See* majority opinion at ¶ 28. The BTA's failure to mention *Steak 'N Shake*, *Rite Aid*, and *Lowe's* therefore cannot prove that the BTA disregarded all of Sprout's adjustments.

{¶ 47} The majority also faults the BTA for not making clear its understanding that Sprout's comparables had to be adjusted to remove the effects of the leases, stating that it is "questionable whether the BTA regarded the adjustments as necessary at all." Majority opinion at ¶ 29. In doing so, however, the majority shifts the burden to show error from the appellant to the appellee, disregarding the well-established rule that "[w]e 'will not disturb' a valuation determination by the BTA 'unless it *affirmatively appears* from the record that such decision is unreasonable or unlawful.' " (Emphasis added.) *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, 57 N.E.3d 1126, ¶ 26, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. If it is "questionable" whether the BTA considered Sprout's adjustments in determining a value for the

subject property, then Lowe's has failed to meet its burden to affirmatively show on the record that the BTA's valuation is unreasonable or unlawful.

**{¶ 48}** It is true that the BTA cited *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, and *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, for the proposition that "sales of build-to-suit properties subject to long-term leases may be indicative of the value of those properties." 2015 WL 11018613 at *3. But the BTA was addressing the argument that Sprout improperly used first-generation and build-to-suit properties as comparables for an unencumbered, owner-occupied parcel. On appeal here, however, the question is not whether first-generation properties and build-to-suit properties may be used as comparables. In *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 23, we held that they can. Rather, the question is whether the sale price of a comparable property that is encumbered by a lease has been adjusted to indicate the price for which the unencumbered subject property would sell.

**{¶ 49}** Here, the BTA did not say that encumbered and unencumbered properties can be compared "apples to apples" without adjusting for the value added or lost by leases. Rather, it indicated that "the adjustments [Sprout] made * * * were appropriate." 2015 WL 11018613 at *4. Had the BTA believed that it was not necessary for Sprout to adjust the sale prices of his comparables to account for the effect of leases, presumably it would not have accepted his appraisal, which included those adjustments, as competent and probative evidence of value. But in the absence of evidence to the contrary, a presumption of regularity attaches to the BTA's actions so that we presume that it means what it says. *See Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28. We therefore must presume that the BTA reviewed and accepted Sprout's adjustments, as it said it did.

{¶ 50} In the last analysis, the BTA weighed the probative value of two appraisals and found one to be more probative than the other, a decision that "rests within the core of the BTA's competence as fact-finder and deserves the highest degree of deference from this court." *Meijer Stores Ltd. Partnership* at ¶ 18. "Absent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 14. And because it does not affirmatively appear from the record that the BTA disregarded the adjustments that Sprout swore he made or that the BTA otherwise abused its discretion in weighing the evidence, Lowe's has failed to carry its burden to demonstrate reversible error on appeal.

{¶ 51} Accordingly, I would affirm the decision of the BTA.

DEWINE and DEGENARO, JJ., concur in the foregoing opinion.

_____

The Gibbs Firm L.P.A., Ryan J. Gibbs, and Geoffrey N. Byrne, for appellants.

Rich & Gillis Law Group, L.L.C., and Kelly A. Gorry, for appellees.

_____